On Docket 2-17-0832, Peter J. Curielli, Plaintiff Appellee, v. Illinois Department of Financial Regulation, Brian O. Schneider, Secretary, Defendant Appellee. Arguing on behalf of the Defendant Appellee, Ms. Bridget M. DeBattista. Arguing on behalf of the Plaintiff Appellee, Mr. Thomas W. Bluth. Are you ready to proceed? Yes, Your Honor. Good morning. Good morning. May it please the Court, Bridget DeBattista on behalf of Defendant's Appellants. Your Honors, we ask that this Court reverse the Circuit Court's decision which overturned the Department's discipline for two main reasons. First, the Circuit Court erred in adopting and construction of the Real Estate License Act, which would allow a real estate broker to act as both an attorney and a broker in the same transaction, as long as another attorney is simply designated as the attorney of record. It was more than just a designation. In this case, the Secretary did find, yes, Your Honor, that both John, who we refer to in our briefs as John, Curielli's father, did perform legal services, but that also Curielli, Peter Curielli, also performed legal services. However, under the construction adopted by the Circuit Court, it would be enough simply to have an attorney of record be, quote, the attorney and allow a second attorney to also perform legal services. And that is in addition to, yes, Your Honor. And as we argue in our brief, that would essentially allow an end run around the prohibition of the statute. And we ask that the Court reverse the Circuit Court's interpretation on that. Second, the Circuit Court afforded the Department's final disciplinary determination, which involved both a statute it regularly administers as well as witness credibility determinations, zero deference. Applying the correct deferential clear error standard, however, this Court should affirm the discipline, as it should not be left with the, quote, definite and firm conviction that the Department was mistaken. Now, regarding the first point on the statutory construction, Curielli argues on appeal, as he did below, that he may, as a broker, operate as both a broker and an attorney in the same transaction, so long as his father, who is also an attorney, is designated as the attorney of record. In support of this theory, Curielli proposed a torture reading of the Act, which the Circuit Court accepted. The Act provides that when a licensee is also an attorney, he is prohibited from acting as the attorney in the same transaction in which he is acting as a broker. Curielli argues that through the use of the word the, the legislature did not mean to prohibit all attorneys from acting in dual capacities, but rather only the, quote, attorney of record. In adopting this interpretation, the Circuit Court created an exception, a carve-out, that appears nowhere in the plain language of the statute. As we argue, this construction violates well-established rules of statutory construction, in that it both adopts a strained construction of the statute, and also that it produces absurd results. And that result that we had argued in our briefs would be that simply by designating another attorney as the attorney of record, a second attorney may violate the Act and operate in both capacities. Allowing for this interpretation would weaken the statute, which seeks to protect against what Curielli versus Quinn, that we refer to in our brief as Curielli 1, recognized as a, quote, inherent conflict. A conflict arises when a broker acts as both a broker and an attorney in the same transaction. Would it be any different if the attorney were in the same office? I think that that, that was the case here, and that, and I think that would allow, it would make it even more convenient, unfortunately, to simply have a second attorney designated, and that would be all that is needed for this attorney to act in both capacities. So your position would be the second attorney who filed an appearance would do nothing other than simply file a piece of paper and stand by and mute? Yes, Your Honor. Under where in the code of professional conduct would that pass muster? We do not believe that that would. So why would you assume that a second attorney who filed an appearance would do nothing to protect his client? Well, Your Honor, even if they were to do something, the fact is that the second attorney would still be in a position of providing both services. Well, okay, let's do this. We'll call it the first attorney who would just be the attorney of record for the real estate transaction. Why would we assume that that attorney would abdicate his or her responsibility to protect his client or her client from any perceived conflict or real conflict? We are suggesting that that is a result that could endure, but it could be possible that the attorney would not necessarily abdicate all their responsibility, as in this case. John did not. But shouldn't we always assume that attorneys are going to fulfill their ethical obligations? Yes, Your Honor, and even if we do, we would have a situation where we, again, have the second attorney performing both functions. And when we look to Chiarelli 1, in Chiarelli 1, Chiarelli attempted to argue, well, a full disclosure can abate the conflict. He made a different argument. Here he's saying having a second attorney in place is going to abate the conflict. Okay, his argument in Chiarelli 1 was a disclosure is going to abate the conflict. The court there found, no, it is an inherent conflict. But your point was that that interpretation would weaken the statute, the purpose of which was to protect a would-be client from any conflict. Yes. So in order for that to be so, we somewhat have to assume that the other attorney does nothing to protect the client. Does fees, do fees have anything to do with the intent of that legislation? Your Honor, I'm not sure what the motivations might be for operating in dual capacities here, whether it's financial, whether it's convenience. I mean fees as a real estate broker. So I'm sorry, I'm not sure that I fully understand the question. Well, I mean, if you're negotiating as a real estate broker, your fees are going to be bigger at certain things, or you might get certain fees, whereas if you're an attorney, you're going to be looking more closely at certain things. Oh, yes, Your Honor. Would you overlook certain things as a real estate broker that maybe you wouldn't if you were solely the attorney? Yes, Your Honor, and that's the basis for the conflict. As an attorney, you're supposed to be independent and not driven by the deal closing, whereas a broker is always seeking for the deal to close so that they are entitled to the commission. An attorney is supposed to have an independent outlook on the entire case. And the idea being that there is this second attorney in place who theoretically is performing that function. When you have an attorney who is acting in both capacities, that risk is still present. If you're an attorney that's not only providing the broker services but also performing legal activities here. What was the relationship of Mr. Chiarelli with his father who was listed as the attorney of record? What's the relationship there? Is one an employee of the other? Are they partners? I can say from the record that Peter Chiarelli, the son, is an associate of the firm. In this transaction, he was also wearing the hat of niche realty, which is, I believe, his business where he was the broker. So he was operating in both capacities. But he is affiliated with his father's law firm. Yes, he is an associate of that firm. Yes. Chiarelli argues that the construction of the statute should be read to allow an attorney, an attorney to perform both activities. But as we know, this would create a large exception, a carve out that appears nowhere on the face of the statute. And because this conflict is an inherent one, it is not enough. By simply having another attorney present with respect to the discipline imposed, as we noted in our briefs, Chiarelli's adoption of this construction of the statute is further evidence of his casual attitude towards the importance of avoiding the conflict. This case does not involve a contrite licensee trying to defend against his email communications involving legal services. Rather, Chiarelli has maintained throughout these proceedings that he has done nothing wrong in acting in both capacities. He argues that he may be an attorney and that he may provide legal services in violation of the act. But at the same time, he also is arguing and has argued that the nomenclature, if you look at the bottom of the email, doesn't list him as a lawyer in one case or a real estate broker in the other. So isn't he saying that? He has argued that, well, I should clarify that there's two emails in issue. The February 5th email does include his signature block as listing him as an attorney. The February 6th email, I don't believe, contains a signature block. The court found that it was the content of the email, or excuse me, the secretary found that it was the content of the email that controls. But he did find it relevant that around the time that these discussions, these legal battles were taking place, that this signature block did start appearing with Chiarelli identifying himself as attorney. So that was something that the secretary did find was intentional. Because Chiarelli has maintained that he has done nothing wrong, that he may act as an attorney, and that the act is not prohibited from providing legal services, the secretary determined that a discipline that included some time to consider the importance of avoiding this conflict was necessary. Also, the secretary imposed a $9,500 fine, which included $7,400 in the broker commission that the secretary determined Chiarelli was not entitled to. Moving on to the second point, on the merits. This court should also reverse the court's determination that Chiarelli did not violate the act. As noted, the central question of whether Chiarelli's conduct, which are the facts, involved him acting as his client's attorney in violation of the act, which is the law, is a mixed question reviewed for clear error. The circuit court in its reasoning never articulates the standard. This error permeated the analysis of the circuit court. Rather than defer to the department's determination, the court improperly reviewed the determination de novo. Employing the proper standard, the court should not be left with the, quote, definite and firm conviction that the department was mistaken. The department carefully evaluated the evidence, including the testimony of Laird, an experienced real estate attorney, and Briscoe, an experienced... Does it really matter what they thought as opposed to what Mr. Chiarelli did or didn't do? Yes, Your Honor, I think it is. It did support the secretary's determination as he states in his decision. I realize that the secretary relied on it. My question is, where's the authority, case law authority, for that to be a consideration here? Well, in determining whether there was a violation, there is fact-finding that needs to occur, and that does include witness testimony, and a lot of this case does involve... Right, Ms. Robinson said that she thought so, but my question is, where is any case law that says that is a factor that either the secretary or the court should consider? Well, with respect to Robinson's testimony, if we look to Dana Jealous, which we cite in her case, as well as Hebler and Anderson, all those cases involved expert testimony which spoke to the industry standards, and here we have Robinson testify as to industry standards, as well as Laird and Briscoe. Both of these were experienced professionals where it was appropriate. We have it in Dana Jealous and in Hebler where the court looked to individuals in these professions as appropriate evidence for what was appropriate conduct here. So both Laird and Briscoe's testimony was relevant and should not have been wholesale rejected by the circuit court. The circuit court does not even identify a standard when it wholesale disregards or states that that testimony should not have been admitted. When we look to the case law, we see that it must be a high level of prejudice for this court to reverse the agency with respect to admission of evidence. In Dana Jealous and Hebler, the court looked to the ability of the licensee to cross-examine an expert, for instance, and in that instance found that that ability to do so would not arise the level of prejudice to reverse the secretary's determination. With respect to the February 6, 2013 email, Chiarelli advocated on behalf of the buyers as to the legal effect of the contract in his communications to opposing counsel. This is at the record of the emails at C875. He began by stating his position that there are not, quote, a separate set of rules for short sales. He went on to state that parties have a, quote, legally binding contract. He added that within that contract, the only reference to a short sale was in an addendum to the contract and then goes on to give his interpretation of the legal effect of that addendum. Does it matter here that his client was an attorney? Your Honor, as we argue in our brief, the statute vigorously protects all Illinois citizens regardless of their… I'm sorry, I should have been more clear in my question. My point is if I'm a broker and I simply reiterate my client's complaints, who happens to be an attorney, does that make me practicing law? Well, Your Honor, we argue in our brief that this was not simply, as the circuit court said, letting the other side know about a term in the contract. If we look to this email, we see that Chiarelli is advocating a position to opposing counsel. At this point, he has stepped beyond the role of a broker, and I see my time is up. Let me ask you another question. A lot of this information from the February email, February 6th email, a lot of this discussion back and forth, wouldn't a realtor be in the same position to talk about these things and wouldn't a realtor know, for instance, about the taxes, how they're prorated, certain, the pest control, certain things like that. How is that so outside of the realm of the knowledge of a realtor? Well, with respect to the pest control and things that were a little more mundane as the circuit court found, that, I would not argue, crosses into that line. It's when we're getting into what is the legal, what are the rules for short sales, what is the effect of the addendum, that is legal work. That is explaining how does this addendum affect the contract, what are the rules for short sales. And in addition to that, it's not simply reminding the other side, but it's a communication with opposing counsel advocating a legal position. And these emails serve as evidence, but we also would like to stress that in addition to these emails, we have the testimony of Briscoe and Laird, who had the opportunity to observe and discuss, and if I may continue, I know I'm well beyond my time, this dividing point between where you have a signed contract, so the pre-negotiations prior to a legal document, and then after the entry into the contract, where now you have a legal document and you're arguing over... Would it be your ultimate position, then, that once a contract is signed for sale of property, that a broker and a realtor must remain... I don't think, pardon me, Your Honor, I don't think the court needs to draw that definitive line. In effect, we're doing that. If we're saying this is over the line, then, therefore, anything on the other side of the line is only what is available. I think it serves as evidence that he was in the shoes of an attorney at this point, that he had. If there is a closer question, that this is not that case, that he has gone beyond the role of a broker in advocating these positions,  which the Secretary determined to be credible of these witnesses, that these were the roles being taken. You will have a chance to speak. Thank you, Your Honors. May I? Yes, sir. Perp Stegall, you are right. Good morning, Your Honor. Tom Gutsch on behalf of the appellee. Your Honor, may I also introduce my client, Peter Crowley, who is with us today? Your Honor, as the circuit court pointed out, there was nothing really done properly in this prosecution. It would be categorized as a prosecution. They took testimony from a real estate broker that, in her opinion, Peter Crowley was practicing law. They took testimony from an attorney that Peter Crowley was practicing law. Then they brought in an expert witness to say Peter Crowley was practicing law, all of which was inadmissible. Circuit court was right. You don't have experts come in and testify to an ultimate issue of law. That's for a trier to determine. What this case really comes down to is a series of e-mails and a suggestion that a HUD statement was wrong. The first e-mail, the February 5th one, is the one that has the signature block of attorney, correct? Right. Yes. The second one doesn't, if my memory is correct, the February 6th one doesn't have anything. It doesn't say realtor, it doesn't say broker, it doesn't say lawyer, correct? Right. So that leaves a person with the inference, at least, that this is coming. These positions are being stated by a lawyer, wouldn't you say? That would be a way of construing it. Well, isn't that the only way? When the signature block says, hey, I'm a lawyer, attorney of law. Except that I heard that he was not the attorney for the buyers. Well, he's the one who's negotiating the details of this, correct? Yes, sir. And he's holding himself out as a lawyer. He's using the wrong signature block. He's holding himself out as a lawyer by using the wrong signature block, right? He's holding himself out that way by using the wrong signature block to someone who knows he's not the attorney of record. You know, I've often thought that when we invented e-mail, it was a perfect situation for lawyers to get themselves in trouble. It was a lot easier when we used a typewriter and stationery. But as Judge Hoffman, I think, pointed out, the substance is more important than the signature, or the body of the e-mail is more important than the signature. What he was talking about were things that brokers do. I mean, brokers negotiate things. There's a statement in the court. Do brokers give opinions as to the effect of an addendum on a contract? I think under some circumstances. They might get in trouble if they do. Under some circumstances, brokers do that. I think brokers routinely do a lot more than people give them credit for. And if they didn't, the legal beast would be astronomical to close a real estate transaction. The Circuit Court raised that sort of on its own, its comments about if we don't allow brokers to, in effect, preliminary work, then you're going to be paying substantially greater fees for your closing to your attorney. Judge Hoffman did point that out. It was in connection with getting after the seller about, I believe, it was a snowmobile that disappeared or was missing. Snow globe. Snow globe. Well, it's close. But it's a little different, Mr. Vooch, isn't it, if the realtor is not also a lawyer? I mean, if the realtor is not a lawyer and the realtor is giving some opinions that may border on something that a lawyer might do, that realtor is not acting in a dual role. No, I think the realtor is giving opinions based on the knowledge that a realtor picks up during the course of a brokerage practice. Right. Without holding himself out as a lawyer. Right. Exactly. Right. Now, we talked about with your opponent, we talked about the fee issue and how a realtor's goal in closing a deal may be a little bit different or a lot different than the goal of a lawyer in closing the deal. How does this conflict, how do you justify this conflict or how do you? I don't believe Peter Crowley had a conflict in this case because his father was the attorney of record. Isn't it the potential conflict that we look at, though, not the actual conflict? I think if you look to the appearance of an impropriety rather than the actual impropriety in judging public service, certainly, and I suppose in this context a broker as well. But I think it was pointed out in the circuit court, it's impossible for a lawyer acting as a broker to shut off his mind of knowledge that he has. I mean, it's just not possible. Now, the only way to prevent it from happening is saying, absolutely, if you're a real estate broker, you can't be a real estate broker if you're a lawyer. Or you can't be a lawyer if you're a real estate broker. Then you wouldn't have these problems, but the legislature hasn't seemed fit to do that. I mean, things were out of hand back in the early 60s when the Quinlan Tyson Act came down through Chicago Bar Association versus Quinlan. At that point, you had brokers actually practicing law. I mean, my mother was a broker. She did everything. She didn't need a lawyer for that. And then Quinlan Tyson came along and said, no, we're not going to do that anymore. And some of it was fee-related. Some of it was because brokers wanted to be a lawyer. I mean, so they make their money. Whereas a lawyer, a competent lawyer will kill a deal if it's in his client's interest. Precisely. Precisely. And that's why you have to have this separation. Well, what did he do to practice law? And that's really the whole thrust of the situation. There is a failure of proof in the administrative proceeding. There's no question about that. Let's talk about the administrative proceeding. Judge Hoffman reviewed this de novo. Is he supposed to review it de novo? I believe so, because I believe it was a question of law. And that's all it was. The facts, everybody agreed on the facts. I mean, there are very few facts that were in dispute, as we pointed out in our brief. The e-mails were in. Why they would say John Peter Corelli, or Corelli the Elder, his testimony was not credible simply because he came in and testified that he was a broker of record and it's his son. And that's like saying, well, you're not telling the truth because it's your son. I mean, there's no evidence to support that. There's no reason to make that finding a lack of credibility. The same goes for the young buyer who was a Cook County State's attorney and then used Corelli the Elder on a number of occasions, not Corelli the Elder. And I don't want to get our Corellis mixed up. I'm not trying to be cute by doing that. Mother Corelli was also in there. Well, yeah, Mother Corelli was there. She's a paralegal. I mean, it's a family law firm. And they found her not credible. Yeah, for no reason at all. This was preordained. I mean, we're going to teach a lesson to lawyers. We're going to get them out of the real estate business. I mean, look at it. You can tell it was preordained. Look at the complaint they served him with. Nobody should be found guilty of anything based on that kind of a complaint. He didn't find out exactly what they were talking about, despite repeated requests, until the day of the hearing, which is why the Red Suicata argument doesn't work because he couldn't have filed a lawsuit suggesting that, as applied to him, it was unconstitutional until after the hearing was over. He didn't know what it was that they said he did. And they wouldn't tell him. They wouldn't give him discovery. He asked for that repeatedly. They would have disclosed other cases where they had disciplined people. And, in fact, when they finally did, the discipline wasn't basic as to him. The discipline imposed an indefinite suspension, which in our community means forever. I mean, when they suspend a lawyer, the ARDC does it until further order of court. Frequently does not come for a very long time. And when they suspend a broker's license indefinitely, to me it's a death sentence. Getting back to the discovery, he had the e-mails, right? Yes. Is there any other discovery that was necessary besides those e-mails or significant? Only because at the time he made the discovery request, he didn't know it was just the e-mails because they wouldn't point it in a complaint. There were no issues defined in the complaint. So he asked for an elaborate discovery of the department's methodologies, and he should have had it. But that isn't what he asked for. On their methodologies, what do you mean? On how they were handling these types of complaints down there. What other complaints had been filed? What other reports of discipline had been entered? Those are all there. But doesn't that just go to the discipline, assuming there was a problem? Yes. Yes. But there was a suitable discovery method. It indicates the way the department was operating. And we come down to the fact, again, can the department determine what the practice of law is, or is it the exclusive province of the Supreme Court? Within the context of the statute, I think they probably have to make that determination, and they could enforce the statute. Or they send a case to the disciplinary commission, which they did anyway. As we point out in our brief, after they got done with him there, they then decided, well, now the disciplinary commission should go after him. So they referred it there, where it still languishes. This was not the way something should have been handled. And I've maintained that those emails do not constitute the practice of law. If a real estate broker sent out those emails, they would not be charged with the, in my opinion, charged with the unauthorized practice of law. It did not reach that level of the special expertise that somebody would need to advise a client. So you're saying, actually, if the signature block had been Nish Realty, we wouldn't be here? Oh, I suspect we would have been here anyway, but that was something that they jumped on to try to substantiate their position. I think no matter what it had said, we were going to be here. Based on the proceedings in the administrative hearing, I think we were going to be here. Yes, sir. But I don't believe if you set aside, and I think that was Judge Hoffman's point, if you set aside the signature blocks, and yes they are, they all came from a real estate broker, it didn't reach the level of the practice of law. And the easiest way to look at that would be to say, if a real estate broker had sent those emails out to an attorney on the other side, would that have constituted the unauthorized practice of law? And I submit to you it would not. Probably not, but again, the reason that you have a real estate broker and you have a lawyer is so the client is protected, correct? Yes, ma'am. But Mr. Corelli doesn't say, boy, I really could go for this fee, I want to hurry up and close this deal so I can get this fee, as opposed to a lawyer, as you said in the beginning, is going to look at it differently. Of course. So you have a real estate broker maybe making these suggestions, it might not turn a head, but when you have a lawyer, a real estate broker who is a lawyer, those two roles are precisely what that statute was meant to protect a client from. Isn't that correct? Yes, ma'am. And that's why there was an attorney of record, Corelli the elder, and nobody can say he was just a, there is no evidence to suggest that he was just a, what a show. I mean, there was evidence that suggested he represented these people on previous real estate transactions. But the evidence was the non-evidence of him sending out these e-mails or of him communicating. I think that's what they looked at the evidence as, was his non-actions, correct? Correct. But the clients said that they felt the father was representing them. Yes. And in fact, the evidence that came in would indicate the father was, but it doesn't indicate that he wasn't the attorney of record. They suggest that we maintain that because we use the word the, that means we can have an end run and anybody can do anything. We never said that. There could be only one attorney representing the party in a residential real estate transaction, the attorney of record, and that was John, John C. Corelli. Do you have any other comments about the discipline? I'm sorry, ma'am? The discipline. What was your argument? I thought it was lousy. I thought it was way out of line. Your argument or the decision? I think the discipline that was published was lousy to use of an accurate. I think there was no basis for that kind of discipline. This is a man who never had any prior issues whatsoever, no prior discipline. They take his license indefinitely and then they fine him $9,500. How does that bear any reasonable relationship to the facts of this sort of a case? Wasn't that basically the fee that he earned? I'm sorry, ma'am? Was that basically the fee that he earned? I have no idea how they computed it. It doesn't seem to compute out. You know, it's in the range of a neighborhood. I mean, the fees were not, that's what started this. You know what really brought us here? He had a little fight with the other real estate broker over the fees. I mean, that's in the record. That's what brought us here. The other real estate broker decided, well, I'll teach this guy a lesson. I'll file a complaint against him. It suggested he's being a lawyer. And the claimant is correct. But that's really what it came down to was a fight over fees. It should have just rested when they got done with that realtor mediation they did. But they had to go the extra mile. And, of course, young lawyers on occasion get older lawyers upset with the way they talk. And certainly a seller's lawyer was upset with Mr. Crowley in his capacity as a real estate broker. I mean, these things happen. Some would even say when I was a young lawyer I said things that I shouldn't have. When you were a young lawyer? When I was a young lawyer, some would say that I might have said things. He's still a young lawyer. I'm not young anymore. Justice Schuetz is leaving. I hit the salary mark this year. What's the standard of review for us on the imposition of discipline? On the discipline? Views of discretion, I think. Thank you. Do you wish to reply? Thank you, Your Honors. As attorneys, we recognize the importance of avoiding conflicts. In this case, there should be a conflict that is avoided where a broker should not be acting as both an attorney and a broker in the same transaction. This is not a case where my opponent argues there needs to be a shutting off of the mind for an attorney that's also a broker. It's simply a recognition that it is inappropriate as a broker to be offering legal services. Does it have any weight that the clients, the buyers here, felt that his father was, in fact, their lawyer? I think when we look to the fact that the ALJA, who had the ability to observe the demeanor of these witnesses, found that testimony not to be credible, we have to look at that as a credibility determination that's entitled to significant deference, which the Associated Court reported no deference to. What's the buyer who testified who was an attorney? Did the ALJA file an ARDC against that person as a lawyer presenting non-credible testimony? No, Your Honor. Let me explain. I don't believe that there was any argument that it was deceitful, the testimony. It was simply that there was maybe not a full understanding on the part of the Erdlers as to who was operating as the attorney and who was operating as a broker. And although John did perform some attorney services, we see here that Chiarelli was performing legal services and has admitted in his brief that this is appropriate. And we ask that this Court reverse the circuit court and firmly uphold this statute, which seeks to prevent this conflict, which is an important one, and which Chiarelli's casual attitude towards this conflict indicates that he will continue to act in both capacities. It is a mixed question. Although my point argues there are no disputed facts, there does not need to be disputed facts. It's a question of facts applied to the law. That is a mixed question. There was credibility determinations here, again, which are entitled to deference. John's testimony that he directed the sending of these emails was found to be not credible. It was found to be evasive and defensive. John, during his testimony, testified as to the conduct of Laird's secretary instead of directly answering the questions with respect to their own conduct. Again, Chiarelli has argued that performing legal services is okay, that he can perform as an attorney. That, we argue, is not appropriate for a broker. With respect to the due process argument in terms of the complaint, we cite several cases involving an administrative complaint not meeting the same level of specificity as found at the civil court level. Nevertheless, there was information about the date of the transaction, the parties involved, and the violation alleged. That did satisfy the due process requirements. Although my point argues that there was no discovery, there was discovery given here. Chiarelli was given the emails that formed the basis for the violation. I think the question was, did he get everything he asked for, not that you gave him something? I am not aware of anything that they were not given. And everything that was pertinent to this case, they did have, as far as I am aware. So just to be clear, you don't know what he asked for? Just your belief that he had everything that Chiarelli asked for? Right, that is not part of the exact discovery request. But the pertinent emails that form the basis for the legal services arguments were made available to Mr. Chiarelli. Also, an indefinite suspension of not less than one year is not a death sentence. There is an ability to seek reinstatement of a suspended license. In addition, Chiarelli is served six months of this suspension, so an affirmance here would be an additional six months. The $9,500 fine is comprised primarily of the $7,400 that Chiarelli was, as the Secretary found, not entitled to due to his operating in both capacities here. And that disciplinary determination is viewed for abuse of discretion as found by this Court in Sontag. I think the Court has no further questions. If you are, we ask that the Court reverse the circuit court and confirm the Secretary. Thank you both very much for your arguments. We will be in recess until the next argument. I thank you both very much for very good arguments this morning. Thank you.